UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CHRISTY and DAVID SCHNEIDER,
     Parents,
     individually and on behalf of L.S., Student,

     Plaintiffs,

                        No. 1:21-cv-01083 JB/JHR

v.

BOARD OF EDUCATION OF LOS LUNAS
SCHOOLS;  LOS LUNAS SCHOOLS GOVERNING
COMMITTEE;  KURT STEINHAUS, Secretary of
Education for the State of New Mexico;  and
NEW MEXICO PUBLIC EDUCATION DEPARTMENT,

     Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
NEW MEXICO PUBLIC EDUCATION DEPARTMENT'S
MOTION FOR PROTECTIVE ORDER**

Plaintiffs Christy and David Schneider (Parents) oppose the Motion for Protective Order

filed by Defendant New Mexico Public Education Department (NMPED)  on May 17, 2023

[Doc. 62].  This Response is timely if filed on or before May 31, 2023.

New Mexico Public Education Department (NMPED) filed a Motion for Protective Order

seeking to eliminate two-thirds of the topics identified by Parents' Notice of Rule 30(b)(6)

deposition.  *See* Doc. 62 at 4 (NMPED seeks protection for 21 of 31 topics identified by Notice).

NMPED is a *public agency* which exists to meet the educational needs of school-aged

children in the state of New Mexico.  It is a defendant in this action because Parents' son L.S., a

child with a low incidence disability in the Los Lunas Schools, which receives federal and state

funding for L.S.'s education,  has not received public education on a school campus or a single

full day of education for six years.  NMPED has known specifically that L.S. was not being

provided education by LLPS since, at latest,  December 2019 when Parents filed an IDEA state complaint with NMPED.  NMPED, New Mexico's State Educational Agency (SEA) within the meaning of the IDEA,  receives federal funding and has responsibility, under multiple federal and state laws, to ensure that students with disabilities in New Mexico can receive public education free from discrimination on the basis of disability.  Whether NMPED is a public entity which allows, creates and sustains a public education *system* which discriminates against students with disabilities — here, L.S. — is a central issue.

NMPED's Motion for Protection arises from the Department's basic misunderstanding about how its own system of public education routinely allows discrimination against students with disabilities.  Our national history is that,  until fairly recently, students with disabilities were overtly prevented from attending public schools.  *See, e.g.,* 20 U.S.C. §1400( c)(2)(B). Exclusion of students with disabilities from school attendance was an educational norm until about 50 years ago.  In the 50 years since enactment of the Rehabilitation Act of 1973, students and parents of students with disabilities have continuously battled for enforcement of Section 504 and then the IDEA, including most certainly across the entire state of  New Mexico.

It is axiomatic that refusing to allow a student with disability to attend public school based on actual or assumed challenges in meeting the child's needs due to disability is discriminatory.  NMPED wishes to flip this basic principle on its head, preferring its own theories of accidental, inadvertent or allowable exclusion of students with disabilities  from public school in New Mexico.

Topics identified in Parents' Notice of Rule 30b6 deposition  are intended to search out information and facts about NMPED's operation of the state's system of public education,

2

penetrate the NMPED's hypocrisy, obtain understanding of the "whys", and prepare for a trial where it is anticipated that NMPED will claim it has no responsibility to L.S. or his Parents.

As to the anchoring concept of "proportionality" in analyzing NMPED's desire for protection from "burdensome" discovery, this discovery sought from NMPED is squarely proportional to the case. Parents are seeking to enforce educational rights of a nonspeaking minor child with disability against a state agency which operates with 100s of employees and controls and spends millions of taxpayer dollars to ensure public education in New Mexico: public education that this child, L.S., cannot obtain.

While NMPED lists a variety of boilerplate objections, its overall argument is that a single child's inability to access the public education promised to all students is disconnected from the state's *system of public education for all children:* hence, NMPED's theory of accidental or inadvertent exclusion from receipt of public education. If L.S.'s inability to receive public education on a school campus is simply an accident, then the "system" of education does not matter and, according to NMPED, is an irrelevant topic for discovery. The NMPED's companion theme is that its employees who carry out the *system* for public education cannot be expected to know how it operates or what federal and state laws require of the system. The NMPED's "it's too hard" excuse must be evaluated, again, in the context of a case where the child with a disability cannot get public education in New Mexico *despite* laws, rules, and media releases about the State's commitments to public education. The lowest bar for receipt of public education is the basic right of being able to attend public school.

In response to NMPED's specific objections, Plaintiffs offer the following explanation to allow NMPED to better grasp the relevance of each topic and to support this Court's exercise of

discretion allowing for requested discovery:

**Topics 1, 2, 3**

NMPED does not contend the topics are irrelevant; the Department's objections are that any employee(s) designated to respond might make a mistake and leave something out. [Doc. 62 at 11-12.] NMPED claims it would be burdensome to prepare its employee(s) to testify. Id.  The need to prepare for a Rule 30(b)(6) is not in itself a burden, it is an expected part of the discovery process. *See* Bhasker v. Kemper Cas. Ins. Co., 361 F.Supp.3d 1045, 1122 (D.N.M. 2019) ("While counsel will have to carefully prepare the Rule 30(b)(6) representative, they must always do so.")

Topics 1 and 2 are focused specifically on NMPED's actions concerning L.S.'s education since the IDEA Due Process Hearing Officer determined L.S. was denied FAPE in October 2021 (Topic 1) and since the time NMPED received Parents' state complaint in 2019 (Topic 2).  It is reasonable to assume that *someone* at the Department has already thought about this as part of day to day responsibilities.  To the extent the topics require research within the Department, it is probably not a wasted effort as it is assumed that NMPED witnesses at trial would testify about these two topics.  There is no objection to the designated witness relying on notes to identify dates, names, activities.  The point of these topics is not to trip someone up, it is to obtain the requested information.   It is also highly unlikely that either of these topics will result in voluminous content.

Topic 3 asks about NMPED's own process for making specific assurances on its annual application for federal IDEA funding.  Since this application is an annual requirement which results in obtainment of  millions of federal dollars for education of students with

4

disabilities in New Mexico, it is assumed there would be some known and finite guidelines and personnel assigned. Assurances made by NMPED in its annual IDEA B application go to the Department's credibility in denying all accountability for L.S.'s inability to get education. The topic provides a snapshot, potentially, of NMPED's nonchalance or rigor when it comes to its responsibilities for students with disabilities.

**Topics 4, 5**

These topics direct NMPED to review what its state-level partners have concluded about the State's system for public education and seeks to learn whether NMPED has the same self-knowledge about existing problems. NMPED claims that these topics are irrelevant as they are only about "education in [a] general sense." [Doc. 62 at 5.]   L.S.'s inability to obtain full day, on campus education is a concrete, specific example of outcome from the State's "education in [a] general sense" system. NMPED's pretense of ignorance about L.S. and his inability to obtain education in Los Lunas Schools is part of its defense. Contradicting NMPED's claims of ignorance will be part of the evidence at trial. The specific conclusions or facts recited in these documents are not made by Plaintiffs, they are made by state-level partners of NMPED.

**Topic 6**

NMPED claims that it is not relevant to find out whether NMPED has *ever* acted to restore education to students with disabilities pushed out of school by the local school district. [Doc. 62 at 5]. It is important to find this information out in order to contrast the Department's previous actions (if any)  with its lack of action here. It is anticipated that NMPED will argue in this litigation that it was ignorant about what happened to L.S. in Los Lunas Schools or powerless to act. Having knowledge through discovery about NMPED's previous action or lack

5

of action to intervene when students with disabilities cannot get education from their public schools is relevant evidence of NMPED's deliberate indifference to L.S.'s plight.

**Topics 7, 8, 9, 10, 11, 28, 29, 31**

NMPED argues that these topics "all seek testimony that relates to general attendance issues, not the issues involved in this case." [Doc. 62 at 6].   NMPED's belief  that "general attendance issues" do not matter to this case is revealing, but unconvincing.  The NMPED's notable failure to intervene for L.S. is in direct contrast to its multiple soliloquies, rules, and funded initiatives enshrining the importance of school attendance.  These topics are included for the Rule 30(b)(6) Notice in order to obtain concrete details about the multiple ways in which NMPED has claimed, during the same period of time L.S. has been out of school, that school attendance is critical and that the State attributes blame to parents and students when a student is not "showing up" for education.

**Topics 22, 23**

NMPED objects that these topics are "not limited to LLPS or the education of L.S." [Doc. 62 at 7.]  L.S.'s lack of education takes place in the context of an entire system of education: his Parents' inability to obtain education for their son is a result, not an unexpected occurrence detached from the system of public education in New Mexico.  The sorts of  claims made on paper about New Mexico's delivery of public education to its children, if true, do not extend to students with disabilities, specifically when compared to the denial of education to L.S.  Questions about NMPED's on-paper "equity" go to NMPED's credibility.

Specifically as to Topic 23, the relevance is not to issues of reading instruction particularly but rather the State's recent experience in "discovering" the science of reading and

then realizing that local school districts were not equipped or inclined to make changes without state mandates and guidance.  This recent history is analogous to what happens to students with low incidence disabilities in local schools.  Local schools are not inclined to learn how to meet their needs.  Just as with reading instruction, state leadership and technical assistance are required.

**Topic 27**

NMPED objects that Topic 27 is "improperly directed at NMPED, as it is not the LEA." [Doc. 62 at 7].  NMPED also claims that the topic improperly seeks NMPED's " 'mental impressions, conclusions, opinions and legal theory' on issues directly raised by Plaintiffs' claims, allegations, and theories" or calls for expert knowledge.  [Doc. 62 at 10.] NMPED is entrusted by state and federal law with detailed and complex responsibilities to administer public education in New Mexico and in that sense has "expertise" about public education: that does not mean that its day to day decision making is protected from scrutiny as secret mental impressions or knowledge of an "expert."

 This case is about a complete failure of public education for a student with disability which continues on, in full view of the NMPED.  It is unclear what the NMPED's explanation is for allowing this to continue over multiple school years when, at all times, NMPED could have responded practically to initiate/restore/protect L.S.'s rights to attend school.  There is nothing "improper" about asking NMPED to explain its position on L.S.'s educational history, as a public agency receiving millions of dollars to ensure availability of education for students with disabilities.

**Topics 8, 12, 13, 19, 24, 25, 26, 27**

7

NMPED argues that it should be protected from revealing its "mental impressions, conclusions, opinions and legal theory." [Doc. 62 at 7-8].  Topics 8, 12, 13, 19, 24, 25, 26, 27 are asking about the operations of a state agency which deals, every day, with carrying out or ignoring multiple responsibilities imposed by federal and state laws and regulations.  Asking how the NMPED understands and acts on its assigned responsibilities is the point of noticing a Rule 30(b)(6).  Claiming NMPED  needs to be "protected" from explaining what it does as a public agency is nonsensical and eviscerates the right to conduct discovery through Rule 30(b)(6) deposition.

**Conclusion**

This Court should exercise its discretion to allow discovery to proceed as requested by Plaintiffs' Notice of Rule 30b6 deposition to NMPED.  NMPED's evasion only confuses.  For an accurate presentation of facts at trial, it is essential that Plaintiffs be given opportunity to ascertain and pin down NMPED's role.

Respectfully submitted,

STEVEN GRANBERG, ATTY. AT LAW

*/s/ Gail Stewart*

_____
Gail Stewart
3800 Osuna NE, Suite 1
Albuquerque, NM 87109
(505) 244-3779, x. 3
gstewart@66law.com
*Attorney for Plaintiffs*

I certify that on this 31 day of May 2023
I filed this Response through the CM/ECF system
which caused all counsel of record to be served

8

as more fully stated in the Notice of
Electronic Filing.

*/s/ Gail Stewart*

_____

Gail Stewart